UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re

DAVID CAMEO,

               Debtor.

Chapter 7

Case No. 21-41803-jmm

AMAZON.COM SERVICES LLC,

               Plaintiff,

     v.

DAVID CAMEO, an individual,

               Defendant.

Adversary No. 21-01180-jmm


**MEMORANDUM DECISISON GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**


Davis Wright Tremaine LLP
John M. Magliery, Esq.
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104

Davis Wright Tremaine LLP
Lauren Dorsett, Esq.
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104

*Attorneys for Plaintiff Amazon.com
Services LLC*

Lust & Leonov, P.C.
Roman Leonov, Esq.
442 5th Avenue, Ste 1715
New York, NY 10018

Morrison Tenenbaum PLLC
Brian J. Hufnagel, Esq.
87 Walker Street, Floor 2
New York, NY 10013

*Attorneys for David Cameo*

## INTRODUCTION

Amazon.com Services LLC ("Amazon") moves for summary judgment on its claim that the $2,183,162.40 owed to it by David Cameo is nondischargeable under Bankruptcy Code section 523(a)(2)(A) as a debt obtained by actual fraud. Amazon alleges that David Cameo used his wholly owned company, Jersey Cameras 2 Inc., to engage in what it calls a "hit-and-run" fraud. A "hit and run" fraud is where an Amazon seller accepts money from customers, fails to fulfill customer orders, and then disappears with the customers' money. In 2018, Amazon received thousands of complaints from Jersey Cameras 2 Inc.'s customers. The customers complained they did not receive their orders or received low-priced items (like USB bracelets) instead of the high priced merchandise they ordered (like laptops or drones), and Jersey Cameras 2 Inc. was unresponsive to requests for refunds. Amazon refunded $2,183,162.40 to Jersey Cameras 2 Inc.'s customers under Amazon's A to z guarantee program. Amazon alleges it could not recover the $2 million owed to it by Jersey Cameras 2 Inc. because David Cameo caused the company to transfer its cash to an entity owned by David Cameo's brother.

David Cameo opposes summary judgment contending there are disputes as to material facts and the Court should not decide this matter without hearing David Cameo's testimony. As set forth herein, David Cameo has failed to introduce evidence creating a dispute as to a material fact. The evidence supports Amazon's claims that David Cameo caused his company to defraud its customers and to transfer its cash to ensure Amazon could not recover the amounts owed to it. Therefore, Amazon's motion for summary judgment is granted.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated

December 5, 2012. The Court may hear and determine this adversary proceeding because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL BACKGROUND

On October 12, 2021, Amazon filed a complaint commencing this adversary proceeding. *Amazon v. Cameo,* Adv. Pro. No. 21-01180-jmm, ECF 1.

On November 6, 2023, Amazon moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Pl.'s Statement of Material Facts, ECF 56-1, Mem. Law Supp. Mot. Summ. J., ECF 57. On December 4, 2023, David Cameo filed opposition. Mem. Law Opp'n Mot. Summ. J., ECF 67, Def.'s Statement of Material Facts and Resp. to Pl.'s Statement of Material Facts ("Def.'s Statement of Material Facts"), ECF 68. On December 15, 2023, Amazon filed a reply in support of its Motion for Summary Judgment. Reply Mem. Law Supp., ECF 69, Pl.'s Resp. to Def.'s Statement of Material Facts, ECF 70. The Court held oral argument on the Motion for Summary Judgment on January 23, 2024 (the "Hearing").

Amazon moved to strike and exclude David Cameo's expert witness report. Pl. Mot. to Strike, ECF 71, Pl. Mem. Law Supp. Mot. to Strike, ECF 72. David Cameo opposed the motion. Def. Mem. Law Opp'n Pl's Mot. to Strike, ECF 78. Amazon filed a reply in further support of its motion. Pl. Reply Mem. Law Further Supp. Mot. to Strike, ECF 79. The Court denied the motion for the reasons set forth on the record of the Hearing. Hr'g. Tr. 59:9 – 62:13, January 23, 2024, ECF 81.

Amazon also moved to strike and exclude Joseph Schweke's ("Schweke") declarations filed in opposition to Amazon's Motion for Summary Judgment.  Pl. Mot. to Strike, ECF 73, Pl. Mem. Law Supp. Mot. to Strike, ECF 74.  David Cameo opposed the motion.  Def. Mem. Law Opp'n Pl's Mot. to Strike, ECF 77.  Amazon filed a reply in further support of its motion.  Pl. Reply Mem. Law Further Supp. Mot. to Strike, ECF 80.  The Court granted the motion for the reasons set forth on the record of the Hearing.  Hr'g. Tr. 56:19 – 59:8, January 23, 2024, ECF 81.

<h1 align="center">BACKGROUND</h1>

**Entities Related to David Cameo**

<u>Jersey Cameras 2 Inc.</u>

David Cameo formed Jersey Cameras 2 Inc. in 2016.  David Cameo Dep. 27:15-20, February 22, 2023 (hereinafter, "Trustee Dep."), ECF 68-17.  David Cameo is the sole officer, director, and shareholder of Jersey Cameras 2 Inc.  Def.'s Statement of Material Facts ¶ 3. David Cameo was the sole signatory on Jersey Cameras 2 Inc.'s bank accounts.  *Id*. ¶ 5.  In September 2016, David Cameo paused Jersey Cameras 2 Inc.'s operations and joined Digital Direct and More Inc.  Trustee Dep. 30:6-8; 51:8-9.  As set forth more fully below, Digital Direct and More Inc. is owned by Ari Cameo, David Cameo's brother.  *Infra* p. 6.  On March 1, 2018, David Cameo left Digital Direct and More Inc.  Trustee Dep. 51:5-7.  In 2018, David Cameo returned his focus to Jersey Cameras 2 Inc.  David Cameo Dep. 28: 9-17, December 14, 2022 (hereinafter, "Amazon Dep."), ECF 68-2.

Jersey Cameras 2 Inc.'s business was to sell cameras and accessories through Amazon Marketplace.  Trustee Dep. 27:21-25.  In or around 2016, Jersey Cameras 2 Inc. purchased the "Super-Savings" Amazon seller account from Jersey Cameras, an entity unrelated to David Cameo.  Amazon Dep. 48:19-25; 50:1-10; 81:4-6; Decl. of John Rutledge in Supp. of Mot.

Summ. J. ¶ 8 (hereinafter, "Rutledge Decl."), ECF 56-2; Rutledge Decl. Ex. 1, ECF 56-3. David Cameo caused Jersey Cameras 2 Inc. to acquire the Amazon seller account from Jersey Cameras because it was an established Amazon seller account that already had business. Amazon Dep. 49:9-25. Jersey Cameras 2 Inc. used the Super-Savings account to sell new and used merchandise. *Id*. 154:16-21.

In or around 2018, David Cameo caused Jersey Cameras 2 Inc. to open a second Amazon seller account named "Super Savings Refurb/Lightning Savings" ("Lightning Savings"). Amazon Dep. 362:1-9. Rutledge Decl. ¶ 9; Rutledge Decl. Ex. 2, ECF 56-4. Jersey Cameras 2 Inc. used the Lightning Savings account to sell refurbished merchandise. Amazon Dep. 154:11-15, 20-25. David Cameo established the Lightning Savings account due to an Amazon policy change that required refurbished merchandise to be sold on a secondary account. *Id*. 362:1-16.

Jersey Cameras 2 Inc. had no employees. Trustee Dep. 29:13-15. David Cameo operated Jersey Cameras 2 Inc. from his home on a laptop. Amazon Dep. 104:6-9. As set forth more fully below, Jersey Cameras 2 Inc. allegedly purchased all its inventory from Digital Direct and More Inc., an entity owned by David Cameo and his brother Ari Cameo. *Infra* p. 7.

When Jersey Cameras 2 Inc. would receive an order from an Amazon customer, David Cameo would obtain the merchandise from the Digital Direct and More Inc. warehouse and package and ship the goods himself. Amazon Dep. 42:13-18; 104:10-105:1. Jersey Cameras 2 Inc.'s only source of revenue was payments from Amazon. Decl. of Anthony M. Bracco in Supp. of Mot. Summ. J. ¶ 5 (hereinafter, "Bracco Decl."), ECF 56-78 .

<u>Digital Direct and More Inc.</u>

Ari Cameo is David Cameo's brother. Trustee Dep. 31:5-6. Ari Cameo formed Digital Direct and More Inc. in 2014.[1] Ari Cameo Dep. 67:1-5 (hereinafter "Ari Dep."), ECF 68-7; Trustee Dep. 31:9-10. Digital Direct and More Inc. sold electronics and accessories on Amazon and other online sites. Ari Dep. 70:3-19; Trustee Dep. 31:13-20; 45:15-17. Digital Direct and More Inc. also wholesaled electronics and accessories. Ari Dep. 9:7-10; 176:6-7.

Ari Cameo was the sole owner of Digital Direct and More Inc. until September 1, 2016, when David Cameo became a 50% shareholder. Trustee Dep. 34:11-24; 51:8-9. After acquiring his interest, David Cameo was responsible for buying products and pricing. *Id*. 45:7-14. David Cameo also was responsible for banking and signing checks. *Id*. 45:18-21. David Cameo was an authorized signatory on Digital Direct and More Inc.'s bank account. *Id*. 45:25-46:3. David Cameo testified he never took any profit, distribution, salary, funds, compensation, or benefits of any kind from Digital Direct and More Inc. *Id*. 51:16-52:6.

In 2017, Digital Direct and More Inc. had $20 million to $30 million in sales. *Id*. 50:4-11. Digital Direct and More Inc. had approximately 10 employees in 2016 and 50 to 75 employees in 2018. *Id*. 52:12-16; 53:9-12. David Cameo claims Digital Direct and More Inc. did not maintain an inventory ledger, check ledger, or use accounting software. Amazon Dep. 124:25–125:2; 125:10-16; 126:10-13. However, Digital Direct and More Inc. did retain invoices. When inventory was delivered to Digital Direct and More Inc., an invoice would be

---

[1] Digital Direct and More Inc. is not to be confused with Digital Direct Inc. In 2009, David Cameo opened Digital Direct Inc. Trustee Dep. 54:25. Digital Direct Inc. was an electronics retailer that primarily sold goods on Google. Amazon Dep. 29: 7-12. David Cameo was Digital Direct Inc.'s sole owner. Amazon Dep. 30: 17-21. Digital Direct Inc. closed in 2014 or 2015 because credit card processors terminated Digital Direct Inc.'s authority to process customer credit cards and held money in reserves. Trustee Dep. 28:11-14.

6

included with the merchandise and the invoices would be stored in a filing cabinet. Amazon Dep. 123:19–124:14.

David Cameo remained a 50% shareholder of Digital Direct and More Inc. until March 1, 2018. Trustee Dep. 51:5-7. David Cameo left Digital Direct and More Inc. due to a dispute with Ari Cameo. *Id*. 43:21-24. David Cameo personally guaranteed an obligation owed to Dialectic Distribution, Inc.[2], notwithstanding Ari Cameo's policy against personal guarantees and specific instructions not to sign a personal guarantee. *Id*. 44:1-8.

On March 1, 2018, David Cameo transferred his 50% interest in Digital Direct and More Inc. back to Ari Cameo. *Id*. 35:5-12, 51:5-7. In consideration, David Cameo received $1. *Id*. 35:15-19. Relatedly, on March 1, 2018, David Cameo, on behalf of Jersey Cameras 2 Inc., and Ari Cameo, on behalf of Digital Direct and More Inc., executed an "exclusivity agreement." *Id*. 35:17-24; *see* Exclusivity Agreement, Def's Statement of Material Facts Ex. 8 (hereinafter, the "Exclusivity Agreement"), ECF 68-9.

Under the Exclusivity Agreement, Jersey Cameras 2 Inc. agreed to purchase all its inventory from Digital Direct and More Inc. Exclusivity Agreement at 1; Amazon Dep. 131:23-133:1. Jersey Cameras 2 Inc. agreed to pay Digital Direct and More Inc. upon payment from Amazon Marketplace. Exclusivity Agreement at 1. The Exclusivity Agreement is silent as to pricing and does not obligate Digital Direct and More Inc. to sell merchandise to Jersey Cameras 2 Inc. at a discount. David Cameo testified, however, that the Exclusivity Agreement enabled Jersey Cameras 2 Inc. to purchase electronics at a better price than other buyers. Trustee Dep. 37:13-19.

---

[2] Dialectic Distribution, Inc. is seeking a judgment that its claims against David Cameo are nondischargeable. *See Infra* p.20.

Ari Cameo and David Cameo testified that Digital Direct and More Inc. would invoice Jersey Cameras 2 Inc. for the goods sold by Digital Direct and More Inc. to Jersey Cameras 2 Inc. Amazon Dep. 134:1-3; 135:8-20; Ari Dep. 143:22-144-8. David Cameo and Ari Cameo testified that Jersey Cameras 2 Inc. would pay Digital Direct and More Inc. from two weeks to 30 days after invoice, depending on when Amazon would remit funds to Jersey Cameras 2 Inc. Amazon Dep. 106:10-16; Ari Dep. 143:3-16. However, between March and December 2018, each time Amazon disbursed funds to Jersey Cameras 2 Inc.'s bank account, David Cameo caused Jersey Cameras 2 Inc. to transfer those funds immediately to Digital Direct and More Inc. Def.'s Statement of Material Facts ¶ 32.

From July 6, 2018 through January 2, 2019, Jersey Cameras 2 Inc. transferred $2,477,150.26 to Digital Direct and More Inc. Decl. of John M. Magliery in Supp. of Mot. Summ. J. Ex. 26 (hereinafter "Magliery Decl.") , ECF 56-30.

<u>Cameo Distributions Inc.</u>

Cameo Distributions Inc. was formed in 2016 or 2017 and is either 100% owned by David Cameo or 85% owned by David Cameo and 15% owned by Ari Cameo. Bracco Decl. ¶ 11 (Cameo Distributions Inc.'s 2018 Federal Income Tax Return identifies David Cameo as the 100% owner of Cameo Distributions Inc.); Trustee Dep. 97:3-12 (Cameo Distributions Inc. was owned 85% by David Cameo and 15% by Ari Cameo). David Cameo was the signatory for Cameo Distributions Inc.'s bank account. Amazon Dep. 198:14-16. David Cameo ran Cameo Distributions Inc.'s day-to-day operations and its financials. Trustee Dep. 98:14-18.

Cameo Distributions Inc. was a wholesaling company and a consulting firm. Amazon Dep. 22: 6-7. Regarding the wholesale business, Cameo Distributions Inc. would sell products to other wholesalers. *Id*. 23:11-13. Initially, David Cameo testified that Cameo Distributions Inc.

wholesaled electronics. *Id.* 23:3-13. After Amazon presented a $12,045 check from Cameo Distributions Inc. to Fine Gold, Inc. that was signed by David Cameo, David Cameo testified that Cameo Distributions Inc. was in the business of wholesaling watches, bracelets, and anything one could "buy and flip." *Id.* 336:9-14. On March 13, 2018, Cameo Distributions Inc. also paid $45,600 to Morre-Lyons Inc., a luxury jeweler located in a New Jersey shopping center. Bracco Decl. ¶ 14(b).

Regarding consulting services, David Cameo would assist clients to become Amazon sellers. Trustee Dep. 97:13-20; Amazon Dep. 22:14-18. For a $3,000 flat fee, David Cameo would generate documents to incorporate an entity, set up a bank account for the entity (with David Cameo as authorized signatory in many cases), and provide the client with an Amazon seller account. Amazon Dep. 227:7-11; 233:9-11; 223:6-15; 225:6-15; 235:8-14; 248:1-21. David Cameo would obtain the Amazon seller account from seller forums and would act as a broker for Amazon account owners to sell their accounts. *Id.* 227:13-16. David Cameo testified it was his understanding that Amazon seller accounts were transferrable. *Id.* 229:8-11.[3] Cameo Distributions Inc. ceased doing business in 2019 after Amazon shut down David Cameo's Amazon seller accounts. *Id.* 25:4-18.

From February 2018 to December 2018, Digital Direct and More Inc. transferred $3,388,841 to Cameo Distributions Inc., of which $872,437 was transferred between October 2018 and December 2018. Bracco Decl. ¶ 12; Def.'s Statement of Material Facts ¶ 36. David Cameo and Ari Cameo claim the payments were for merchandise Digital Direct and More Inc. purchased from Cameo Distributions Inc. Amazon Dep. 22:5-24:8; Ari Dep. 156:16-25.

---

[3] Amazon's Business Solutions Agreement prohibits the transfer of seller accounts. Business Solutions Agreement, General Terms, § 19, Rutledge Decl. Ex. 3, ECF 56-5.

From June 2018 to November 2018, Cameo Distributions Inc. transferred the following amounts to David Cameo's and Shoshana Ostran's joint bank account:  (a) $150,000 on June 22, 2018, (b) $180,000 on November 16, 2018, (c) $70,000 on November 16, 2018, and (d) $10,000 on November 19, 2018.  Bracco Decl. ¶ 13.  Shoshana Ostran is David Cameo's wife.  Trustee Dep.  53:15-18.  Cameo Distributions Inc. also disbursed $16,000 to Diamond Club Passover Vacations Inc. on March 19, 2018 and $12,634 to Ray Catena Lexus on December 27, 2018.  Bracco Decl.  ¶ 14(c), (f).

**Shoshana Ostran's Income and Assets**

Shoshana Ostran's Employment by Digital Direct and More Inc.

Shoshana Ostran started working for Digital Direct and More Inc. in 2016 at approximately the same time David Cameo became a shareholder.  Trustee Dep. 74:17-22.  Shoshana Ostran ran customer service for Digital Direct and More Inc.  Shoshana Ostran Dep. 14:3-5 (hereinafter "Ostran Dep."), ECF 56-32; Trustee Dep. 75:4-7.  In that capacity, Shoshana Ostran would answer customer emails and problem solve for unhappy customers.  Trustee Dep. 75:2-12; Ostran Dep. 14:20-25.  Shoshana Ostran's starting salary was approximately $100,000 to $125,000.  Trustee Dep. 77:2-6.  In or around 2017, her salary increased to approximately $300,000.  Ostran Dep. 16:6-8.  David Cameo testified that Shoshana Ostran's salary increased because of her promotion to customer service manager and her move from part-time to full-time employment.  Trustee Dep. 77:1-12–79:8.  However, Shoshana Ostran testified there had been no changes to her duties or title since 2016.  Ostran Dep. 14:12-19.  In 2018, Shoshana Ostran's salary increased to approximately $400,000.  Ostran Dep. 16:19-20.  In 2021, her salary exceeded $480,000.  *See* Settlement Agreement and Release at 2, Decl. of Roman Leonov Opp'n Mot. Summ. J., Ex. 10 (hereinafter "Settlement Agreement"), ECF 68-11 (immediately

following David Cameo's transfer of his 50% interest in Digital Direct and More Inc. to Ari Cameo, Shoshana "Ostran's salary, which was $125,000 in 2017, increased as follows: $329,679 in 2018; $411,684.00 in 2019; $406,23[0].65 in 2020; and $480,453.22 in 2021"). Shoshana Ostran's sole source of income from 2016 through 2022 was her Digital Direct and More Inc. salary.  Ostran Dep. 95:5-9.

### Shoshana Ostran's Ferrari and Escalade

In 2020, Shoshana Ostran purchased a new Ferrari for herself.  Ostran Dep. 93: 21-94:7. The purchase price was approximately $200,000.  Ostran Dep. 94:11-14; 95:5-9.  Shoshana Ostran testified she purchased it outright, without financing.  Ostran Dep. 94:15-25.

David Cameo testified he does not have a car but he sometimes drives an Escalade that Shoshana Ostran leases.  Amazon Dep. 333:8-14.

### Shoshana Ostran's Real Property

David Cameo, Shoshana Ostran and their children reside at 3925 Bedford Avenue, Brooklyn, New York.  Trustee Dep. 59:13-17.  Shoshana Ostran purchased the residence in 2018 for approximately $2.1 million.  Trustee Tr. 59:21-60:2, 61:9-11, 62:4-7.  David Cameo testified that Shoshana Ostran paid the 20% downpayment from her salary and her savings.  Trustee Dep. 63:16-18.  However, he also testified that Cameo Distributions Inc. loaned $200,000 to $250,000 to Shoshana Ostran toward the downpayment and the loan has not been repaid.  Trustee Dep. 98:19–100:3; Credit Line Promissory Note Guaranty, ECF 68-10.

Prior to living at the Bedford Avenue house, David Cameo and Shoshana Ostran lived in rented apartments in Brooklyn, New York.  Trustee Dep. 79:22 – 80:2; 80:16-22.

In addition to the Bedford Avenue residence, Shoshana Ostran owned a house on East 2nd Street, Brooklyn, New York. Ostran Dep. 57:4-8. David Cameo testified that the East 2nd Street Property was sold in 2020 or 2021. Trustee Dep. 86:4-13.

<u>Shoshana Ostran's LLC Interests</u>

Shoshana Ostran owns 51% of the membership interests in three limited liability companies (the "LLCs"). Bracco Decl. ¶ 10. Ari Cameo and Eli Malakh own the remaining 49% ownership interests in the LLCs. Trustee Dep. 83:14-24; 83:5-8; 84:23-25; 85:2. The LLCs are: 432 Harnell Avenue LLC, which owns 432 Harnell Ave., Oakhurst, New Jersey ("432 Harnell"); 339 Park Avenue LLC, which owns 339 Park Ave., Oakhurst, New Jersey ("339 Park"); and 80 Larkin Place LLC, which owns 80 Larkin Place, Oakhurst, New Jersey ("80 Larkin" and together with 432 Harnell and 339 Park, the "New Jersey Properties"). *Id.*

Each LLC maintained a bank account at Northfield Bank. Bracco Decl. ¶ 10. The Northfield Bank Account agreement for each LLC is signed by David Cameo and identifies David Cameo as the "Manager or Designated Member." *Id.* David Cameo is an authorized signatory for each account. *Id.*

Shoshana Ostran testified she received the interests in the LLCs because she "signed for each property" and agreed to be a borrower. Ostran Dep. 96:16-25. Shoshana Ostran did not provide other consideration to acquire her interests in the LLCs. Ostran Dep. 96:9-13.

Amazon claims David Cameo indirectly funded the LLCs' purchase of the New Jersey Properties. Bracco Decl. ¶ 10. Regarding 432 Harnell, on July 13, 2018, $259,000 was transferred from Cameo Distributions Inc.'s bank account to 432 Harnell Avenue LLC's account. Bracco Decl. ¶ 10(a). On the same day, the same amount was transferred back to Cameo

Distributions Inc.'s account. *Id.* Cameo Distributions Inc. then paid $258,965.49 to a real estate attorney. *Id*.

Regarding 339 Park, on June 21, 2018, Digital Direct and More Inc. paid $442,981.94 toward purchasing 339 Park. Bracco Decl. ¶ 10(b). On that same day, $150,000 was transferred from David Cameo and Shoshanna Ostran's joint account to Cameo Distributions Inc. and Cameo Distributions Inc. transferred $300,000 to Digital Direct and More Inc. *Id*.

David Cameo does not dispute that Cameo Distributions Inc. made the payments to fund the purchase of the New Jersey Properties but claims Digital Direct and More Inc. made some of the payments as well. Def.'s Statement of Material Facts ¶ 39.

**The Amazon Seller BSA and A-to-z Guarantee**

The Amazon Services Business Solutions Agreement governs the use of the Amazon Marketplace and other Amazon products. *See* Business Solutions Agreement General Terms at 1, Rutledge Decl. Ex. 3 (the "BSA"), ECF 56-5; Rutledge Decl. ¶ 10. The BSA is binding on the signatory to the BSA, the business the signatory represents, and the business' affiliates. *Id*. The BSA states the agreement may not be assigned but is nonetheless enforceable on purported assignees. BSA General Terms, § 19 ("You may not assign this Agreement, by operation of law or otherwise, without our prior written consent. Subject to that restriction, this Agreement will be binding on, inure to, and be enforceable against the parties and their respective successors and assigns.").

Under the BSA, sellers are responsible for their own "nonperformance, non-delivery, misdelivery, theft, or other mistake, or act in connection with the fulfillment" of an order and for any nonconformity or defect of any product provided by the seller. BSA, Selling on Amazon Service Terms § S-3.1. Nonetheless, Amazon guarantees every purchase customers make from

third-party sellers through Amazon's A-to-z Guarantee Program. *See* A-to-z Guarantee, Rutledge

Decl., Ex. 5, ECF 56-7.  If a customer receives an order that is different than expected or does

not receive an order three days after the latest estimated delivery date, and the seller does not

respond to refund the item, Amazon will review the buyer's claim and issue a refund.  Rutledge

Decl. ¶ 13.

The BSA grants Amazon the following rights and remedies if a third-party seller delivers

defective or nonconforming goods:

> If we determine that your actions or performance may result in returns,
> chargebacks, claims, disputes, violations of our terms or policies, or other
> risks to Amazon or third parties, then we may in our sole discretion
> withhold any payments to you for as long as we determine any related
> risks to Amazon or third parties persist.  For any amounts that we
> determine you owe us, we may (a) charge Your Credit Card or any other
> payment instrument you provide to us; (b) offset any amounts that are
> payable by you to us (in reimbursement or otherwise) against any
> payments we may make to you or amounts we may owe you; (c) invoice
> you for amounts due to us, in which case you will pay the invoiced
> amounts upon receipt; (d) reverse any credits to Your Bank Account; or
> (e) collect payment or reimbursement from you by any other lawful
> means. If we determine that your account has been used to engage in
> deceptive, fraudulent, or illegal activity, or to repeatedly violate our
> Program Policies, then we may in our sole discretion permanently
> withhold any payments to you.

BSA, General Terms, at § 2.  The BSA permits Amazon to terminate or suspend the BSA

or any services provided under the BSA "for any reason at any time by notice" to the

seller.  *Id*. at § 3.

## The Alleged Hit and Run Fraud

Between October 2018 and December 2018, Jersey Cameras 2 Inc.'s Super Savings seller

account generated significant customer feedback for "item not received" and "materially

different."  Def.'s.'s Statement of Material Facts ¶ 16.  Amazon received thousands of

complaints from customers that purchased high-value items such as drones, cameras, and laptops

but received low value items such as USB bracelets or flash drives.  *Id.*  Jersey Cameras 2 Inc.'s customers submitted claims through Amazon's A-to-z Guarantee program and, ultimately, Amazon paid not less than $2,183,162.40 in customer refunds.  Rutledge Decl. ¶ 21.

Amazon claims the complaints resulted from David Cameo using Jersey Cameras 2 Inc. to "engage in 'hit-and-run' fraud, which is a type of abusive selling pattern where sellers accept money from customers, fail to fulfill customer orders, and then disappear with customers' money, leaving them empty handed and without recourse from the seller."  Mem. Law. Supp. Mot. Summ. J. at 5, ECF 57.  Amazon claims Jersey Cameras 2 Inc. "would send an item that is not what the [customer] ordered.  Something cheap.  And that way the customer still receives an item.  [I]t makes it harder . . . for a customer to then claim they didn't receive anything, because . . . the [customer] actually receive[s] an item that was scanned and delivered to [the customer's] house."  John Rutledge Dep. 31:20-32:3 (hereinafter "Rutledge Dep."), ECF 68-5.

Amazon claims it disbursed customer payments to Jersey Cameras 2 Inc. because David Cameo deceived Amazon into believing that the products ordered by those customers had been shipped.  Pl.'s Statement of Material Facts ¶ 24, ECF 56-1.  Furthermore, Amazon claims Jersey Cameras 2 Inc. did not process customer refunds notwithstanding Amazon had disbursed the customer payments to Jersey Cameras 2 Inc.  *Id*. at  ¶ 25.  Moreover, Amazon claims Jersey Cameras 2 Inc. transferred its funds to Digital Direct and More Inc. immediately upon receipt from Amazon to prevent Amazon from recovering from Jersey Cameras 2 Inc.  *Id*. at ¶ 24; Mem. Law Supp. Mot. Summ. J. at 1-2, ECF 57.

Amazon deactivated Jersey Cameras 2 Inc.'s seller accounts on December 14, 2018. Pl.'s Statement of Material Facts ¶ 24, ECF 56-1.

David Cameo does not dispute Amazon received customer complaints. Def.'s Statement of Material Facts ¶ 16. However, David Cameo disputes the customer complaints were due to fraud. David Cameo explained that prior to the 2018 holiday season, he would "manually ship each order individually, print out the packing slip, print out the label and then staple it." Amazon Dep. 40:1-7; 132: 16-23. Then, he would go to the Digital Direct and More Inc. warehouse and package the items himself. *Id*. 42:9-12.

In November 2018, David Cameo changed his procedures. In anticipation of an influx of holiday season orders, David Cameo claims he hired "agency workers" to help him ship items faster. *Id*. 42:2-8. "Agency workers" are day laborers. *Id*. 172:18-20. David Cameo would give shipping labels to the agency worker who would go to the Digital Direct and More Inc. warehouse, locate the items, package them, and affix a mailing label. *Id*. 41:6-18. David Cameo could not recall the name of the agency that provided the workers, only that a friend gave him a phone number for "Alicia," and she provided workers. *Id*. 172:10-17.

David Cameo claims he also changed the process for producing packing slips and shipping labels. Amazon Dep. 44:16-24. Prior to November 2018, David Cameo would pack and label one order at a time. *Id*. The process was time consuming, so David Cameo "upgraded to ShipStation software." *Id*. ShipStation was one of several software programs recommended by Amazon. *Id*. 173:12-18. David Cameo explained that with ShipStation "[i]t was bulk. You'd get the orders from Amazon straight into ShipStation. You'd sort it by the amount, click packing slip, click mark shipped, and the labels printed out." *Id*. 173:25–174:3.

David Cameo explained he made an error in using the ShipStation software that impacted one or more bulk shipments of customer orders. David Cameo claims he sorted the orders from

highest to lowest dollar amount but printed the shipping labels from lowest to highest dollar

amount.   Amazon Dep. 44:4-9.  He testified:

> [because the labels] printed out backwards so many customers did get low-end
> stuff.  But at the same time, many customers did get high-end stuff.  You know, it
> was the opposite.  Many customers actually did get what they ordered
> …[b]ecause when you hit the middle, many of the order amounts are the same
> exact thing because they're multiple products.  Like, if a guy orders a camera
> that's the same price, all of those would be the same in the middle.  The problem
> is with the high-end ones and low end ones; that's the problem."

Amazon Dep. 174:4-19.  David Cameo also represented:

> [D]uring the period in question, some orders were misshipped/mislabeled.  This
> resulted in a huge flow of errors from customers that ordered, for example a drone,
> and instead obtained a usb-stick.  What Amazon is failing to realize is that at the
> same time this was happening, the customers that were supposed to obtain the usb-
> stick actually received the drone intended for the other customer.  Most of the
> time, those customers did not mention this nor cooperated with the returns.
> Considering the regular onflow of problems and this, Amazon shut down the
> accounts in the middle of debtor's attempt to finalized [*sic*] all of the errors.

Def.'s Resp. to Pl.'s First Set of Interrog.'s, ¶ 17, Magliery Decl., Ex. 29-4, ECF 56-36.

David Cameo contends Amazon's approximately $2.1 million claim results from

Amazon's premature and unreasonable termination of the accounts.  He claims Amazon

terminated the seller accounts based on a machine learning algorithm instead of proof of fraud.

Mem. Law Opp'n Mot. Summ. J. at 4, 7, 9, ECF 67.  He claims he was processing refunds and

would have resolved the complaints, but Amazon refused his requests for access to the seller

portal.  *Id*. at 7.  David Cameo also contends that when Amazon terminated the accounts, it was

holding $300,000 of customer payments that had not been disbursed to Jersey Cameras 2 Inc.

and have not been applied to Amazon's claim.  *Id*. at 13.

The Alleged Fraudulent Transfers

From July 6, 2018 through January 2, 2019, Jersey Cameras 2 Inc. transferred

$2,477,150.26 –substantially all of its revenue -- to Digital Direct and More Inc.  Magliery Decl.,

Ex. 26.  Digital Direct and More Inc. transferred the money to David Cameo's wife and entities he controlled.

Specifically, in 2018, Digital Direct and More Inc. paid Shoshana Ostran a salary of $329,679.  *See* Settlement Agreement at 2.

From February 2018 to December 2018, Digital Direct and More Inc. transferred $3,388,841 to Cameo Distributions Inc., of which $872,437 was transferred between October 2018 and December 2018.  Bracco Decl. ¶ 12; Def.'s Statement of Material Facts ¶ 36.  In 2018, Cameo Distributions Inc. (a) transferred $410,000 to David Cameo and Shoshana Ostran's joint bank account and paid over $28,000 of vacation and car expenses that appear to have benefitted David Cameo and Shoshana Ostran.  Bracco Decl. at ¶ 13.  Additionally, in July 2018, Cameo Distributions Inc. paid $258,965.49 toward the purchase of 432 Harnell.  Bracco Decl. ¶ 10(a).

Furthermore, in June 2018, Cameo Distributions Inc. transferred $150,000 to Digital Direct and More Inc.  Bracco Decl. ¶ 10(b).  Apparently, to reimburse Digital Direct and More Inc., in part, for funding the acquisition of 339 Park.[4]  *Id.*

**The Arbitration**

On October 16, 2019, Amazon filed an arbitration (the "Arbitration") against David Cameo, Jersey Cameras, Inc., Jersey Cameras 2 Inc., and AJ BH Solutions, Inc. ("Respondents") alleging the Respondents committed fraud.  Def.'s Statement of Material Facts ¶ 47.  The locale for the Arbitration was Seattle, Washington.  *Id*.  On April 23, 2021, Amazon moved to impose adverse inferences against the Respondents based on their alleged failure to respond adequately

---

[4] Amazon identified additional payments by Digital Direct and More Inc. to purchase 80 Larkin.  Bracco Decl. ¶ 10(c).  Ari Cameo is the owner of Digital Direct and More Inc. and a part owner of the LLC that owns 80 Larkin. Those payments could reflect Ari Cameo's investment in the LLCs as opposed to a disguised investment by David Cameo.

to discovery requests. *Id.* ¶ 50. On April 29, 2021, the Respondents moved for adverse

inferences against Amazon. *Id.* ¶ 51. On May 10, 2021, the Arbitrator entered an order that

denied the Respondent's motion, granted Amazon's motion, and imposed the following adverse

inferences against the Respondents:

- David Cameo operated or was associated with numerous other Amazon seller accounts and those accounts were suspended or closed for misconduct, including hit-and-run fraud similar to that alleged in Claimant's Amended Demand.

- David Cameo has been an officer, director, shareholder, or employee of numerous other companies since January 2014, and those companies engaged in misconduct and/or fraud similar to that alleged in Claimant's Amended Demand.

- Jersey Cameras 2 Inc. and David Cameo were closely involved with Digital Direct and More.

- David Cameo has been a party to numerous other legal proceedings in which he has been found to have committed fraud or misconduct.

- Jersey Cameras 2 Inc. was not adequately capitalized, supporting the need to pierce the corporate veil.

- Respondents received numerous complaints from Amazon customers and requests for refund, but Respondents failed to offer refunds or address the complaints.

- Respondents have no documentation evidencing their purchase of inventory for products later sold on Amazon's store, because Respondents did not ever actually purchase the products they purported to sell on Amazon's store.

- Respondents did not ship to Amazon customers the products ordered by Amazon customers.

- No invoices or communications with Respondents' suppliers exist because Jersey Cameras 2 Inc. did not in fact ever purchase the goods they purported to sell in Amazon's store.

- Respondents communicated about the arbitration and discussed attempts to avoid liability and discovery obligations.

- Jersey Cameras 2 Inc. has no records of inventory purchases, because it did not in fact have the inventory it purported to sell in Amazon's store.

- Each month, David Cameo withdrew all money from the Jersey Cameras 2 Inc. bank account and transferred it to accounts under his personal control.

19

- Jersey Cameras 2 Inc. failed to maintain general ledgers, annual balance sheets, or other routine accounting documents.

Order on Claimant's Motion for Adverse Inferences and Respondents' Motion to Compel or for Adverse Inferences, Decl. Lauren Rainwater Supp. Pl. Mot. Summ. J. Ex. 37, ECF 56-77 (hereinafter the "Arbitrator's Order").  David Cameo's bankruptcy case stayed the  Arbitrator from issuing a final award.

## The Bankruptcy Case and Related Adversary Proceedings

On July 13, 2021, David Cameo filed a voluntary petition for relief under chapter 7.   *In re Cameo*, Case No. 21-41803, ECF 1.  On August 5, 2021, David Cameo filed his Schedules and Statement of Financial Affairs.  *In re Cameo*, Case No. 21-41803, ECF 10.  His Schedule I declares that he has no current income and his spouse's gross monthly income is $33,366.67.  *Id*. David Cameo's Statement of Financial Affairs declares he has had no income from employment or from operating a business since 2019.  *Id*.  On December 8, 2021, David Cameo filed an amended Schedule A/B that valued his assets as of the petition date at $3,700.  *In re Cameo*, Case No. 21-41803, ECF 62.

In addition to Amazon, two other creditors commenced adversary proceedings against David Cameo.  *See Dialectic Distribution LLC v. Cameo et al.*, Adv. Pro. 22-1054-jmm, *Strategic Funding Source, Inc. d/b/a Kapitus v. Cameo*, Adv. Pro. 22-1066-jmm.  These creditors objected to the dischargeability of their respective claims.  Dialectic Distributions LLC also objected to David Cameo's discharge.

On July 11, 2022, the chapter 7 trustee commenced an adversary proceeding against Ari Cameo and Shoshana Ostran.  *Doyaga v. Cameo et al.*, Adv. Pro. No. 22-1053-jmm, ECF 1.  The complaint alleged that David Cameo's transfer of his interests in Digital Direct and More Inc. to Ari Cameo was a fraudulent conveyance.  *Id.* ¶ 1, 22-33.  Also, the complaint alleged Shoshana

20

Ostran's $1,753,050.87 in salary from Digital Direct and More Inc. was David Cameo's distributions disguised as salary to Shoshana Ostran to hinder or delay David Cameo's creditors. *Id.* ¶ 1, 34-54.

On December 4, 2023, this Court entered an order approving the Settlement Agreement, which required Shoshana Ostran and Ari Cameo to pay $460,000 to the chapter 7 trustee in full settlement of all claims.  Settlement Agreement ¶ 3.  The Settlement Agreement recites the agreement shall not be construed as an admission of liability.  *Id.* ¶ 18.

## DISCUSSION

### Standards for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists."  *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, Adv. Pro. No. 18-1016-cec 2018 Bankr. LEXIS 2226, at *5 (Bankr. E.D.N.Y. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'"  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323–25. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (internal citations omitted).

## **David Cameo is Not Barred from Litigating the Factual Findings in the Arbitrator Order.**

Amazon argues the doctrine of collateral estoppel bars David Cameo from relitigating the factual findings in the Arbitrator Order. The doctrine of collateral estoppel precludes the re-litigation of any issue "'when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim.'" *Trikona Advisers, Ltd. v. Chugh*, 846 F.3d 22, 32 (2d Cir. 2017) (quoting *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343, 15 A.3d 601, 613 (2011)); *see also Resnik v. Coulson*, 2019 WL 1434051, at *3 (E.D.N.Y. Mar. 30, 2019). Collateral estoppel may be applied in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *see also In re Zangara*, 217 B.R. 26, 32 (Bankr. E.D.N.Y. 1998). Decisions entered in arbitration proceedings can have preclusive effect in subsequent federal court proceedings. *Benjamin v. Traffic Exec.*

*Ass'n E.R.Rs.,* 869 F.2d 107, 113 (2d Cir. 1989).  Washington state law determines the preclusive effect of the Arbitrator's Order because the Arbitration was conducted in Washington. *Bard v. Appel (In re Appel)*, 315 B.R. 645, 648 (E.D.N.Y. 2004) (applying Florida preclusion law) (quoting *In re Guccione*, 268 B.R. 10, 14 (Bankr. E.D.N.Y. 2001) (applying Arizona preclusion law); *see also In re Zangara*, 217 B.R. at 31 (stating "[a] prior state court judgment may bar discharge of the debt evidenced by that judgment if . . . the law of the state where the judgment was rendered would give preclusive effect to the judgment").

Under Washington law, a prior decision has preclusive effect if, "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." *Weaver v. City of Everett*, 194 Wash. 2d 464, 474 (2019) (citation omitted).  Under Washington law, an arbitrator's decision may be a judgment on the merits for purposes of collateral estoppel. *Robinson v. Hamed*, 62 Wash. App. 92, 96–97 (Wash. Ct. App. 1991).

The Arbitration proceeding did not end in a judgment on the merits because David Cameo's commencement of this Bankruptcy Case stayed the Arbitration.  Pl.'s Statement of Material Facts ¶ 53, ECF 56-1.  Nonetheless, Amazon argues the Arbitrator's Order should preclude David Cameo from litigating the Arbitrator's findings.  The cases cited by Amazon do not support its position.

Amazon cites *Robinson v. Hamed* to support its contention that "[c]ollateral estoppel may be applied to give a discovery sanctions order preclusive effect."  Mem. Law Supp. Mot. Summ.

23

J. at 18, ECF 57.  *Robinson* is inapposite because the arbitrator's ruling was not a discovery

sanctions order but a final ruling that resolved the arbitration.  *Id.* at 95.

Amazon's reliance on *In re Capoccia*, 272 A.D.2d 838 (App. Div. 3rd Dept. 2000) also is

misplaced because it is distinguishable.  The sanctions order in *Capoccia* was not a discovery

sanctions order against a party.  Rather, the order in that case was to sanction an attorney.

Attorney Carpaccio had been sanctioned in at least sixteen prior cases for raising meritless

defenses asserted without any factual basis.  The Committee on Professional Standards

commenced an action against Attorney Capoccia and argued it was entitled to a finding of

professional misconduct based on collateral estoppel.   Under New York law attorney sanction

orders can be considered final orders.  *See Douglas v. Merck & Co., Inc.*, 456 F. App'x. 45, 47

(2d Cir. 2012) (whether attorney sanction order is final order is determined on a case-by-case

basis).  Further, *In re Capoccia* was decided under New York law, not Washington law.  The

standard for collateral estoppel applied in the *Capoccia* case did not require a final judgment in

the prior action.  *Capoccia*, 272 A.D.2d  at 841 ("[t]here are two requirements for the application

of collateral estoppel, namely, (1) there must be an identity of issue which has necessarily been

decided in a prior action and is decisive of the present proceeding, and (2) there must have been

a full and fair opportunity to contest the determination now said to be controlling.").  Based on

case law provided by Amazon, under Washington law, a final judgment is required for purposes

of collateral estoppel.

*Bannon v. Bannon*, 270 N.Y. 484, 489–90 (Ct. App. 1936), another New York case cited

by Amazon, contradicts Amazon's position.  In *Bannon*, the plaintiff sued for separation and

alimony pendent lite.  *Id.* at 487.  The referee held evidentiary hearings and issued a final report

that there was no marital relationship between plaintiff and defendant because plaintiff had a

living husband when she married defendant.  *Id*.  Defendant then asserted the referee's report

conclusively resolved the question of whether the parties were husband and wife.  Amazon is

correct that the *Bannon* court states, "the words 'final judgment,' … should not be confined to a

final judgment in an action."  the Court, however, went on to say:

> Though an interlocutory judgment may require the immediate performance of acts
> which irremediably affect the rights of the parties, and in that sense may be final,
> yet in so far as it purports to decide the issues litigated in the action, the decision is
> subject to alteration and revision. All judicial and academic authority supports the
> rule that the issues which are litigated or may be litigated in an action can be finally
> adjudicated only by final judgment on the merits. *Discontinuance or abatement of
> the action before final judgment leaves the issues open to contest in other litigation,
> even though they had been decided provisionally by order entered upon a motion
> made in the action or by interlocutory judgment.*

*Id.* at 491 (emphasis provided).  The *Bannon* court then held "[t]he hearings before the referee

may have afforded full opportunity to ascertain the truth or falsity of the plaintiff's allegation

that a marriage existed, but, regardless of the nature of the hearings had, the application was only

for relief pending upon a final judgment."  *Id.* at 492.

Based on the foregoing, the Arbitrator's Order does not collaterally estop David Cameo

from relitigating the factual determinations made in that order because the Arbitrator's Order is

not a final judgment in the Arbitration.

**The Debt Owed to Amazon is Nondischargeable Because it was Obtained by Fraud.**

Bankruptcy Code section 523(a)(2)(A) provides that a "discharge under section 727 . . .

does not discharge an individual debtor from any debt . . . to the extent obtained by . . . false

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or

an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

In *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016), the Supreme Court of the United

States interpreted "actual fraud" for purposes of Bankruptcy Code section 523(a)(2)(A).   In that

case, Husky was owed money for goods sold to Chrysalis Manufacturing Corp.  *Id.* at 357.

Daniel Ritz was one of Chrysalis' directors and shareholders. *Id.* Chrysalis was unable to pay

plaintiff and its other creditors because Ritz caused Chrysalis to transfer its assets to other Ritz

controlled entities. *Id.* Husky sued Ritz seeking to hold him personally liable for the debt that

Chrysalis owed to Husky pursuant to a Texas statute that permits creditors to hold shareholders

responsible for corporate debt. *Id.* at 358. Ritz filed a petition for relief under chapter 7 and

Husky commenced an adversary proceeding seeking a declaration that the debt owed by Ritz to

Husky was nondischargeable. *Id.* The Fifth Circuit Court of Appeals held that Ritz did not

commit "actual fraud" under 523(a)(2)(A) because "actual fraud" required a misrepresentation

from the debtor to the creditor. The Fifth Circuit Court of Appeals observed that "[i]n

transferring Chrysalis' assets, Ritz may have hindered Husky's ability to recover its debt . . .

[but] he did not make any false representations to Husky regarding those assets or the transfers

and therefore did not commit 'actual fraud.'" *Id.* at 359.

The Supreme Court reversed, holding "the term 'actual fraud' in 523(a)(2)(A)

encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a

false representation." *Id.* at 359. The Supreme Court defined fraud as "anything that counts as

'fraud' and is done with wrongful intent." *Id.* at 360. *See also DZ Bank AG Deutsche Zentral-*

*Genossenschaft Bank v. Meyer (In re Meyer)*, 869 F.3d 839, 841 (9th Cir. 2017) (finding that

debtor engaged in actual fraud by causing wholly owned company to transfer creditor's collateral

to another entity he controlled); *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (The

term "actual fraud" is broadly defined to encompass "any deceit, artifice, trick, or design

involving direct and active operation of the mind, used to circumvent and cheat another.");

*Suparo Int'l Inc. v. Kedia (In re Kedia)*, 607 B.R. 101, 114 (Bankr. E.D.N.Y. 2019) (debtor

engaged in actual fraud by causing companies he controlled to transfer funds to debtor's family, friends and companies "to deprive creditor of any ability to collect the debt owed it").

Because fraudulent intent is rarely subject to direct proof, intent to defraud creditors can be shown by the presence of badges of fraud. *Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009).  Badges of fraud are "circumstances that support an inference of intent because they are commonly associated with fraudulent transfers." *Green Tree Servicing LLC v. Christodoulakis (In re Christodoulakis)*, Adv. Pro. No. 16-8155-ast, 2019 WL 360064, at *9 (Bankr. E.D.N.Y. Jan. 25, 2019).  The badges of fraud are:  (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) the transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property; and (8) the shifting of assets by the debtor to a corporation wholly controlled by the debtor.  *In re Kaiser*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).  Fraudulent intent also may be inferred from the surrounding facts and circumstances.  *In re Graham*, 11 B.R. 701, 703 (Bankr. D. Conn. 1981) ("Although intent to deceive is a critical link in the chain of proof required to successfully challenge the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(B), it is not necessary to read the minds of these defendants in order to furnish such proof.  Proof of fraudulent intent may be inferred from the surrounding circumstances.").

David Cameo concedes Jersey Cameras 2 Inc.'s customers complained about receiving low-priced merchandise when they ordered high-priced merchandise. Def.'s Statement of Material Facts ¶ 16. He claims the complaints were due to errors using ShipStation software and agency workers as opposed to fraud. Amazon Dep. 41:6-18; 44:4-9; 174:4-19; Def.'s Resp. to Pl.'s First Set of Interrog.'s, ¶ 17, Magliery Decl., Ex. 29-4, ECF 56-36. David Cameo's explanation is premised on two facts. First, there were customers that ordered low priced merchandise. Second, Jersey Cameras 2 Inc. purchased high-end merchandise that it shipped, albeit to the wrong customers.

There is no evidence that Jersey Cameras 2 Inc.'s customers ordered low-priced merchandise. Amazon produced a record of each order from Jersey Cameras 2 Inc. Rutledge Decl. Ex. 12, 13, ECF 56-14, 56-15. David Cameo has not identified any orders for low-priced merchandise, like USB bracelets. David Cameo asserts the evidence that would support his explanation is unavailable because Amazon locked him out of Amazon's seller portal. Def.'s Statement of Material Facts ¶¶ 21, 27. He has not identified the information in the portal that has not been produced by Amazon.

There is no evidence corroborating David Cameo's claim that Jersey Cameras 2 Inc. purchased inventory to fulfill orders for drones, laptops or other high-cost merchandise. From 2018, Digital Direct and More Inc. was Jersey Cameras 2 Inc.'s sole supplier of inventory. *See* Exclusivity Agreement, ECF 68-9; Amazon Dep. 131:23-133:1. David Cameo and Ari Cameo each testified that Digital Direct and More Inc. invoiced Jersey Cameras 2 Inc. for merchandise. Amazon Dep. 135:4-20; Ari Dep. 143:22–144-8. However, no invoices have been produced.[5]

---

[5] Amazon's exhibits include 41 typed lists (the "Ledger") of products that purport to show that from December 26, 2017 through and including December 3, 2018 Digital Direct and More Inc. sold $1,764,650.19 of merchandise to Jersey Cameras 2 Inc. Magliery Decl. Ex. 27, ECF 56-31. The Ledger was produced to Amazon by David Cameo. Magliery Decl. ¶ 15. David Cameo does not rely on the Ledger in opposition to Amazon's Motion for Summary

Further, Digital Direct and More Inc. failed to produce invoices evidencing it purchased high end merchandise to sell to Jersey Cameras 2 Inc., even though David Cameo testified that Digital Direct and More Inc. retained invoices for the merchandise it purchased.  Amazon Dep. 1223:19-124:14.

There is no evidence Jersey Cameras 2 Inc. shipped high-priced merchandise.  David Cameo identified certain customer complaints that he asserts are evidence that Jersey Cameras 2 Inc. delivered high-end merchandise to customers.  Specifically, David Cameo extracted nine[6] customer complaints from Amazon's approximately 940 pages of customer complaints.  Decl. of Roman Leonov Opp'n Mot. Summ. J. Ex. 15, ECF 68-16; Rutledge Decl. Ex. 6, 7, 8.  David Cameo argues the nine complaints prove that high-end merchandise was shipped because the customers communicated about high-end merchandise in the complaints.  Mem. Law Opp'n Mot. Summ. J. at 5, ECF 67.  However, one complaint is that the customer received a USB bracelet instead of a drone.[7]  Three complaints are that the customers received refurbished or used merchandise when they ordered new merchandise.[8]  Two complaints are that the customers received the wrong merchandise.[9]  Three complaints are that the customers did not receive the

---

Judgment and David Cameo's expert witness did not rely on the Ledger in preparing his expert report.  *See* Expert Report of Gary R. Lampert CPA/CFF, CFE, CIRA at 5, ECF 76.

[6] The exhibit references ten customer complaints but customer complaint identified as AX35PCGW2BWD7 BBC MDCR 114-8202893-2957048 is listed twice.

[7] Rutledge Decl. Ex. 6, page 5 of 426, line 60, A3I7TPE88NY4N2 CSC MDCR 111-3604193-0046601 12/7/2018 ("Do not buy from this company through Amazon !!! Did not receive my package and they said my drone was sent and signed for.  This company took my money and sent me a wrist band computer plug in that read 25% off my next purchase, what a total scam.").

[8] Rutledge Decl. Ex. 6, page 8 of 425, line 129, A3I7TPE88NY4N2 CSC MDCR 112-1088071-2023461 12/5/2018 ("Customer received this order, but it was not the item he had ordered. It was the previous model and it was a refurbished one."); Rutledge Decl. Ex. 7, page 1 of 3, line 14, AX35PCGW2BWD7 MDCR 114-8202893-2957048 10/28/2018  ("This is a refurbished product.  It was listed as BRAND NEW ON AMAZON."); Rutledge Decl. Ex. 7, page 1 of 3, line 12, AX35PCGW2BWD7 CLAIMS   MDCR 112-7819905-3697014  9/20/2018 ("Seller clearly stated the condition of the item was new. It is obviously heavily used").

[9] Rutledge Decl. Ex. 7, page 2 of 3, line 25, AX35PCGW2BWD7 CLAIMS   MDCR 112-0244730-3720219 9/30/2018 ("I ordered an XP80 waterproof camera October 9 -- the order arrived but was the wrong camera -- regular digital camera, wrong color - not waterproof."); Rutledge Decl. Ex. 6, page 1 of 425, line 3,

accessories that were to accompany the order (e.g., tripods and lenses).[10]  Those last three complaints could evidence that Jersey Cameras 2 Inc. shipped cameras or drones but David Cameo did not provide the prices for those items.  Therefore, this Court cannot find the items shipped were high-priced or high-end merchandise.

David Cameo offered his deposition testimony as evidence that the customer complaints resulted from Shipstation and agency worker errors.  His testimony does not disclose the dates on which the ShipStation errors occurred or identify the orders impacted by the errors.  He did not offer data from the ShipStation software or explain why no data is available.  In summary, there is no evidence corroborating David Cameo's contention that there was an error with ShipStation.[11]  Likewise, there is no evidence corroborating David Cameo's claim that agency workers improperly packed orders.  Indeed, there is no evidence that Jersey Cameras 2 Inc. used agency workers at all.  There is no invoice from the agency that supplied the workers, record of payment to the agency, or affidavit from "Alicia" that her agency supplied workers.   Further, David Cameo's testimony does not explain how the agency workers were supposed to match invoices and labels to the boxes of merchandise.  Therefore, even if David Cameo incorrectly

---

A3I7TPE88NY4N2 CLAIMS   MDCR 114-9226634-9068266  12/13/2018 ("The camera that was bought by the customer was the wrong color that he received and it was the wrong camera").

[10] Rutledge Decl. Ex. 7, page 2 of 3, line 13 AX35PCGW2BWD7 BBC MDCR 111-0401099-3558605 10/24/2018 ("Hello, i still have not received the missing items from my order? Can someone please give me a status?"); *Id.* at line 28 AX35PCGW2BWD7 BBC MDCR 111-8794076-6941018 9/20/2018 ("the customer have [*sic*] received the item that has an incomplete or part or accessories missing the parts that are missing are: spare battery, the filter kit, the landing pad, no information on the 1 year extended warranty"); Rutledge Decl. Ex. 6, page 1 of 423, line 6, A3I7TPE88NY4N2 REVIEWS MDCR 112-6077673-7791422 12/12/2018 ("did not receive the tripod or the extra battery pack. 2 of the other items I received were different than what is listed/shown. Sent several messages to the seller but no response.")

[11] David Cameo submitted declarations from Joseph Schweke as evidence that the complaints resulted from a ShipStation error. Mem. Law Opp'n Pl.'s Mot. to Strike and Exclude Decl. and Testimony of Joseph Schweke, Ex. 1, 2, ECF 77.  Joseph Schweke declared "[t]o the best of my knowledge, what occurred around November 2018 was that Shipstation obtained orders from Amazon's portal where the shipping labels were sorted and printed in one way but the packing slips with a different sorting parameter resulting in mismatches and erroneous shipments."  Schweke *Id.* at Ex. 2, ¶ 7.  As set forth more fully on the record, the Court excluded the declaration because, among other things, Schweke had no first-hand knowledge, and David Cameo failed to designate Schweke as an expert witness. Hr'g. Tr. 56:19 – 59:8, January 23, 2024, ECF 81.

printed the invoices and labels, there is no evidence that the agency workers incorrectly packed or mislabeled the customer orders.

David Cameo claims Amazon's termination of the seller accounts was based on an algorithm, not evidence of fraud. Amazon acknowledged it uses machine-learning software to analyze accounts and flag accounts for customer complaints regardless of whether the complaints stem from mistake or fraud. Rutledge Dep. 6:14; 18:14–19; 19:15–18; 100:22–25. Amazon denies accounts are terminated based on the algorithm and claims once an account is flagged, a team looks at the flags as well. Rutledge Dep. 17:23–18: 1; 113:19-21; 134:1–4. Amazon claims it would not terminate an account for complaints attributable to honest mistakes. Rutledge Dep. 135:9-17. David Cameo has not produced evidence to refute the testimony from Amazon's witness that the seller accounts were not terminated automatically due to an algorithm.

David Cameo also contends that Amazon's claims are inflated. He argues if Amazon had not terminated his access to the seller portal, he would have responded to the complaints, refunded amounts as he deemed appropriate, and Amazon would not have had to pay over $2 million in customer refunds. Def.'s Statement of Material Facts ¶¶ 21, 27.

Amazon claims it terminated Jersey Cameras 2 Inc.'s accounts appropriately, because:

The Super Savings account, which is the main account, was enforced for more than – for essentially, over 3,000 incidents of sending – or taking orders and then taking customers' money and not sending items.

And then – or I think approximately 500 orders of taking customers' orders, receiving funds, and sending something materially different than what the customer ordered. And all of these were not issuing – also not issuing refunds.

The second account [the Lightning Savings account] had a – I think nine or ten. It was not – it was a smaller account … it was opened more recently … it had the same type of violations, but not as many.

Rutledge Dep. 23:15–24:11; *see* Rutledge Dep. 31:19-325 (Jersey Cameras 2 Inc. would ship a cheap item that was not what the customer order making it harder for the customer to claim they

did not receive the product); Rutledge Dep. 138:22–139:3 (Jersey Cameras 2 Inc.'s responses to the customers delayed customers from acting until Amazon disbursed funds to Jersey Cameras 2 Inc.'s accounts.).

Amazon claims it issued prior warnings to Jersey Cameras 2 Inc. based on complaints from customers that received the wrong items.  Rutledge Dep. 73:11-14.[12]  Amazon also claims it sent a final warning to Jersey Cameras 2 Inc. in mid-November.  Rutledge Dep. 73:11-19. Amazon has not provided the Court with copies of the warnings.  After Jersey Cameras 2 Inc.'s account was blocked, Jersey Cameras 2 Inc. submitted a plan of action to address the customer dissatisfaction issues and the refunds.  Rutledge Dep. 74:15-20.  Amazon denied Jersey Cameras 2 Inc.'s request for reinstatement because Amazon determined the plan of action did not address the complaints.  Rutledge Dep. 74:20-24.

David Cameo has not produced evidence corroborating his claim that he addressed or planned to address the customer complaints.  He has not provided evidence of communications with, or refunds to, customers.  Assuming he furnished a plan to Amazon to resolve the complaints, he did not provide the Court with that plan.  David Cameo also did not explain how Jersey Cameras 2 Inc. would fund customer refunds.  David Cameo contends Amazon was holding $300,000 that Jersey Cameras 2 Inc. could have used to pay refunds.  Assuming that is true (as set forth below, it is not true), there is no evidence those funds would have been available for customer refunds.  From 2016 to 2018, Jersey Cameras 2 Inc. transferred almost every dollar earned to Digital Direct and More Inc., allegedly to pay for inventory, yet David Cameo asserts that last $300,000 from Amazon would not have been transferred to Digital Direct

---

[12] The Court is unsure whether the warnings came before or after Jersey Cameras 2 Inc. purchased the Super Savings seller account from Jersey Cameras.

and More Inc. and would have been available for customer refunds.  The assertion is not corroborated by any evidence.

As set forth above, David Cameo produced no evidence that the money Jersey Cameras 2 Inc. transferred to Digital Direct and More Inc. was to purchase inventory.  In contrast, there is evidence that Digital Direct and More Inc. cycled the money it received from Jersey Cameras 2 Inc. back to David Cameo through payments to his wife and his company.  Regarding payments to David Cameo's wife, from 2018 to 2021, Digital Direct and More Inc. paid Shoshana Ostran over $1.6 million in salary.  *See* Settlement Agreement.  Regarding payments to his company, in 2018 Digital Direct and More Inc. paid $3,388,841 to Cameo Distributions Inc.  Bracco Decl. ¶ 12.  In turn, Cameo Distributions Inc. helped fund the purchase of two of the New Jersey Properties, transferred money to David Cameo's and Shoshana Ostran's joint bank account, "loaned" money to Shoshana Ostran for the downpayment for her house, and paid for vacations and jewelry.  Bracco Decl. at ¶ 10.

At the end of 2018, Jersey Cameras 2 Inc. owed Amazon over $2 million on the A-to-z Guarantee claims and had no cash or assets, and David Cameo had no bank account, real estate, or other assets of significant value.  Shoshana Ostran, however, owned a $2.1 million home (purchased in part with a loan from Cameo Distributions Inc.) (Trustee Dep. 59:21; 62:407), a $200,000 Ferrari (Ostran Dep. 93:11-14; 95:5-9), and 51% of the membership interests in the LLCs (Bracco Decl. ¶ 10).  These facts evidence that David Cameo caused Jersey Cameras 2 Inc. to transfer its cash to Digital Direct and More Inc. to shield the money from Amazon and other creditors.

David Cameo argues the Court cannot determine whether he had the intent to commit fraud without a trial.  Mem. of Law Opp'n Mot. Summ. J. at 10, ECF 67.  This Court may infer

David Cameo's intent to defraud Amazon based on badges of fraud and the surrounding facts and circumstances.

The badges of fraud include:

(1) The lack or inadequacy of consideration.  There is no evidence corroborating David Cameo's contention that Digital Direct and More Inc. provided any inventory to Jersey Cameras 2 Inc. in consideration of the approximately $2 million that Jersey Cameras 2 Inc. transferred to Digital Direct and More Inc.

(2) The family, friendship or close associate relationship between the parties and (8) the shifting of assets by the debtor to a corporation wholly controlled by the debtor.  Jersey Cameras 2 Inc. transferred all its cash to Digital Direct and More Inc., which is owned by David Cameo's brother.  Digital Direct and More Inc. transferred funds to Cameo Distributions Inc., which is owned by David Cameo and to Shoshana Ostran, David Cameo's wife.

(3) The retention of possession, benefit or use of the property in question and (7) the transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property.  Jersey Cameras 2 Inc.'s money was ultimately cycled back to David Cameo's wife to purchase their home, a Ferrari, investments in real estate, and a vacation and jewelry and to lease a Cadillac Escalade.  David Cameo lives in the house, is the manager of the LLCs that own the New Jersey Properties, and drives the Escalade.

(4) The financial condition of the party sought to be charged both before and after the transaction in question and (6) the general chronology of the events and transactions under inquiry.  The Court cannot determine David Cameo's financial condition prior to 2018, except to note that (a) he had income from Cameo Distributions Inc., (b) he had an interest in, but no income from, Digital Direct and More Inc.; (c) his wife's annual salary was $125,000; and (d) he

34

and his family lived in a rented apartment.  After the transactions in question, neither David Cameo nor Jersey Cameras 2 Inc. had income or assets to satisfy the debts owed to Amazon but Shoshana Ostran owned a $2 million home, a Ferrari, and ownership interests in the LLCs that, in turn, owned real property.

The additional facts and circumstances from which the Court may infer fraud include:

- the thousands of customer complaints that Jersey Cameras 2 Inc. shipped low cost, used, and refurbished items in response to orders for high-priced merchandise;

- David Cameo's inability to provide evidence corroborating his claims that the customer complaints were the result of mistakes with agency workers and ShipStation;

- Jersey Cameras 2 Inc.'s failure to provide refunds to customers; and

- David Cameo's determination not to create or retain Jersey Cameras 2 Inc.'s records of inventory purchases.

**<u>David Cameo is Liable for the Indebtedness Owed by Jersey Cameras 2 Inc. to Amazon.</u>**

Amazon asserts David Cameo is liable for amounts owed to it by Jersey Cameras 2 Inc. because David Cameo caused Jersey Cameras 2 Inc. to defraud its customers and Amazon.

David Cameo solely controlled Jersey Cameras 2 Inc.  He was Jersey Cameras 2 Inc.'s sole shareholder, officer, director, employee, and the sole signatory for its bank account.  Except for packages allegedly packed and shipped by agency workers, he performed all day-to-day activities for Jersey Cameras 2 Inc.  Def.'s Statement of Material Facts ¶ 3; Trustee Dep. 29:13-15; Amazon Dep. 42:13-18; 104:10–105:1.  Although he disputes the allegations of fraud, David Cameo does not dispute that he alone controlled Jersey Cameras 2 Inc. and performed all functions.  He does not dispute that he (and no one else) caused Jersey Cameras 2 Inc. to list items for sale on Amazon, ordered the merchandise to fulfill the orders, communicated with customers and transferred all of Jersey Cameras 2 Inc.'s money to Digital Direct and More Inc.

Therefore, David Cameo is liable to Amazon for Jersey Cameras 2 Inc.'s debt because David

Cameo is the person that perpetrated the fraud.  *See In re McGrath*, 7 B.R. 496, 498-99 (Bankr.

S.D.N.Y. 1980) (debtor liable for all fraudulent acts perpetrated in his capacity as president of

corporation); *Virgilio Flores, S.A. v. Jerome Radelman, Inc.*, 567 F. Supp. 577, 579 (E.D.N.Y.

1982) (officers and directors may be personally liable for damages resulting from

misrepresentations where fraud is alleged); *Peguero v. 601 Realty Corp.*,  873 N.Y.S.2d 17, 21

(App. Div. 1st Dept. 2009) (corporate officer who participates in the commission of a tort may

be held individually liable, regardless of whether the officer acted on behalf of the corporation in

the course of official duties and regardless of whether the corporate veil is pierced.); *Liberty Mut.

Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 348 (E.D.N.Y. 2010) ("corporate

officers may be held personally liable for acts of fraud if the officers [knowingly] participate in

. . .  the fraud"); *Interstate Foods, Inc. v. Lehmann*, 2009 WL 4042774, at *3 (S.D.N.Y. Nov. 23,

2009) (corporate officer may be held personally liable for corporation's debt if officer personally

involved in a fraud).

As the Court determined David Cameo is liable to Amazon due to his personal

involvement in perpetuating a fraud, the Court need not consider Amazon's argument that  David

Cameo is liable for Jersey Cameras 2 Inc.'s indebtedness based on the theory of piercing the

corporate veil.

**<u>Amazon is Entitled to a Money Judgement Against David Cameo</u>**

Amazon seeks entry of a $2,183,162.40 judgment against David Cameo.  David Cameo

claims there are factual disputes concerning the amount of the claim that preclude entry of a

money judgment.  Mem. Law Opp'n Mot. Summ. J. at 13, ECF 67.  Amazon's claim is the sum

of the refunds given by Amazon under the  A-to-z Guarantee.  Amazon provided an accounting

of every refund.  *See* Rutledge Decl. ¶ 21, Ex. 13.  David Cameo claims the figure does not account for refunds issued by Jersey Cameras 2 Inc. but he has not produced evidence Jersey Cameras 2 Inc. issued any refunds.  David Cameo also claims Amazon's figure does not account for approximately $300,000 that Amazon owed Jersey Cameras 2 Inc. when Amazon terminated the account.  Amazon denies it was holding $300,000 of Jersey Cameras 2 Inc.'s funds when the accounts were terminated and provided an accounting for the customer funds it received. Rutledge Suppl. Decl. ¶ 10, 11, 12.  David Cameo has not identified any errors in Amazon's accounting.

The Court finds there is no genuine dispute as to the amount of Amazon's claim. Therefore, Amazon is entitled to judgment on its second cause of action for judgment in the amount of $2,183,162.40.

## CONCLUSION

David Cameo has not provided the Court with evidence raising a genuine issue as to any material facts.  None of the documents or testimony supplied by David Cameo corroborate his assertions that the customer complaints resulted from a mistake or that Jersey Cameras 2 Inc.'s transfers to Digital Direct and More Inc., which left Jersey Cameras 2 Inc. without any funds to pay customers or Amazon, were for legitimate business purposes.  Therefore, Amazon is entitled to declaratory judgment that its claims against David Cameo resulted from actual fraud and are nondischargeable and judgment in the amount of $2,183,162.40.

Amazon is directed to submit a proposed order and judgment that conforms with this memorandum decision within fourteen days of entry.

Dated: April 30, 2024
      Brooklyn, New York



Jil Mazer-Marino
United States Bankruptcy Judge